IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br>REINALDO CRESPO VAZQUEZ &<br>WANDELYNE MALDONADO MEJIAS<br>  Debtors | CASE NO. 08-07455 BKT<br><br>CHAPTER 7 |
| Urb Mirador de Bairoa<br>2T Calle 24, Caguas 00727<br>SSN: xxx-xx-7309/xxx-xx-5614 | *To be appended to Pre Trial Report*<br>*Evidentiary Hearing 2/22/2011* |

**DEBTORS' MEMORANDUM OF LAW**

**I      Introduction**

   The Debtors concede that their ability to pay may be the most relevant factor in the motion to dismiss under §707(b)(3) filed by the U.S.T.  Notwithstanding, the Debtors argue that taken as a whole, their financial situation does not demonstrate abuse, although their household [HH] expenses may be higher than some of the IRS Standards.  Their HH expenses on Schedule J are neither excessive or for luxury or unnecessary consumer goods, but rather the actual cost of food, utilities, clothing, medical, car and private school expenses.  The Debtors further state that their Schedules and statements of current income and expenses accurately reflect their true financial condition and their family budget is neither excessive nor unreasonable.

   The U.S.T. cannot show through a preponderance of the evidence that debtors' financial situation demonstrates abuse as required by §707(b)(3)(B). It is Debtors' proffer that when seen under  a totality of circumstances  approach  that takes heed of the special needs of their family, the cost of living and the need for private schooling in Puerto Rico,  debtors'  monthly expenditures as disclosed in  Schedule J  are both reasonable and necessary  and therefore  do not demonstrate abuse.   Debtors further submit  that it is inappropriate of the U.S.T. to attempt to pigeon-hole each of debtors' HH expenses into a strict application of the IRS Standards into Schedule J without considering the totality of circumstances that surround this case and this family.

1

The totality of circumstances approach to determine abuse enacted by §707(b)(3)(B) gives the Court discretion to take into account in such determination the fact that a thorough analysis of the means test following the scope of §707(b)(1) & (2) will serve to establish that there is no abuse.

An objective review of Debtors' financial situation under a "totality of circumstances" approach will clearly serve to establish that debtors do not live a lavish lifestyle at the expense of their creditors, as well as to show to this Court that the Debtors made a good faith effort to repay their creditors through a debt consolidation plan with Alma Financial during 1.5 years before resorting to bankruptcy but could not continue to maintain those payments without affecting payment of utilities and secured debt. Debtors' schedules and statement of current income and expenses reasonably and accurately reflect their true financial condition. Debtors have neither manipulated the means test, purchased luxuries on credit on the eve of bankruptcy, altered or inflated their expenses in their Schedules, accrued significant debt prior to the petition, or is their budget excessive or unreasonable." *In re Le Roy*, 2009 WL 357923 (Bankr. E.D. Wisc. Feb. 12, 2009). Neither have debtors built up their secured debt to take advantage of the means test unlimited deduction for secured debt to further produce a negative disposable income under their Means Test.

Debtors are prepared to establish that they are a 4 member household and family who live modestly and within their income without luxuries in their lifestyle. They live in an unassuming property valued at $128,000.00, that is in dire need of repairs and upkeep. The property is encumbered by a first mortgage in the fairly moderate amount of $100,069.00. Debtors have foregone purchasing furniture and presently their home is practically unfurnished. Debtors are further in need of replacing basic electrical appliances such as their washing machine, and have refrained from replacing their kitchen cabinets which are constantly in need of repair. They own 2 moderately priced cars, one free of lien but more than 10 years old with high gasoline consumption and repair costs, the other being a 2007 Mazda that is used by petitioner Reinaldo Crespo for his daily commute to work in San Juan, which often requires work on Saturdays.

Despite having an above medium income which is higher than many families in Puerto Rico, Debtors are deprived of sufficient and regular disposable income to fund a chapter 13 plan at the amounts propounded by the U.S.T. even after downward adjustments of their HH expenses, such as lowering school tuition by changing their minor child from her prior school to a less costly school after the bankruptcy filing.

The special needs of debtors' family and the high cost of living in Puerto Rico simply do not allow these AMI debtors to consent to a conversion of their case to chapter 13. Debtors need their chapter 7 in order to maintain their heads above water and weather the storm of the continuing rise in the cost of living in Puerto Rico by obtaining a fresh start.

One of the HH expenses objected by the U.S.T., is that of the cost of debtors' private school and related expenses. Although in the United States there may be some reported cases which consider private school education expenses as an unnecessary expense for a debtor, the reality in Puerto Rico is unfortunately not the same. The Court should take judicial notice of the state of the public school system in Puerto Rico in the cases before its consideration which greatly contrasts with the situation in the U.S., requiring in Puerto Rico the use of private school education as a necessity and not an option or luxury. A working family virtually cannot count on the public school system in Puerto Rico to offer a secure and safe environment for the education of a minor child. A private school in Puerto Rico offers these debtors both a better education for their child, as well as providing the child security allowing debtors to responsibly attend to their employment free from the insecurity and instablitiy seen in the public schools of Puerto Rico.

The U.S.T.'s allegations are not supported under a the totality of circumstances of the Debtors' financial situation.

**II.   Background & Procedural Posture**

Debtors filed this petition under chapter 7 on October 31, 2008 as a "primarily consumer" case as Above Medium Income [AMI] debtors with a Current Monthly Income [CMI] of $7,449.67[1] on the revised and amended Means Test[2] with a household size [HH] of 4 consisting of one school age minor child and an elderly mother in law and the two debtors.

---

[1] Represents both debtors' 6 month average income or CMI without the tax refunds initially used in the computation upon filing, but later excluded and amended at d.e. #25 and later at d.e. #61.

3

The applicable median family income [AMF] at the date of the filing of debtors' petition was $25,830 for Puerto Rico for a HH of 4, debtors' Annualized Current Monthly Income at line 13 of the Means Test is $89,396.04 between both debtors. Refer to d.e. #61.

Debtors scheduled $128,000 in real property and $34,438 in personal property at d.e. #1 at Summary of Schedules with $119,357 scheduled secured debt [home mortgage of $100,069.00] and $75,050 in unsecured debt pursuant to the Summary of Schedules at d.e. #1.

The §341 hearing was continued on several occasions by the Trustee for reasons not attributable to debtors. The §341 Meeting was concluded on March 26, 2009 after more than 5 continuances not initiated by debtors.

Debtors opposed the U.S.T.'s motions for extensions of time to file §727 &/or §707(b) motions and objected the untimeliness of the U.S.T. Statement of Abuse. Refer to d.e. #28,[3] 29,[4] 38,[5] & 40,[6] and 54.[7] This Court partially ruled in favor of debtors on procedural grounds on October 27, 2010 at d.e. #49 denying the U.S.T. motion to dismiss under §707(b) 1 & 2 regarding abuse and ability to pay because of the untimeliness of the statement as to whether the debtors' case would be presumed to be an abuse under §707(b) as required by §704(b)(1)(A). The Court, however did not dismiss the U.S.T.'s motion under §707(b) 3. Refer to d.e. #49.

After more than 203 days into debtors' bankruptcy, the U.S.T. on May 22, 2009 filed a Motion to Dismiss alleging abuse and bad faith of debtors under §707(b) 1, 2 & 3. Refer to d.e. #30. The extended date for filing any motions or objections by the U.S.T. was extended beyond the February 1, 2009 deadline to May 4, 2009 at d.e. #14. Technically, no other extensions were granted after May 4, 2009 by the Court, nor has there been any determination of "cause" to extend the initial deadline to file the §707(b) motion.

---

[2] Heretofore, all references to debtors' Means Test &/or Schedules I & J are in reference to the Amended Means Test & Schedules I & J filed on 1/25/2011 at d.e. #61.

[3] Debtors' Opposition to UST Second Request for Extension of Time to File Objections to Discharge &/or Dischageability of a debt filed at d.e. #38.

[4] Debtors' Memorandum of Law in Support of Opposition to UST Second Request for Extension of Time to File §707(b) Motion to Dismiss & §727 Objection to Discharge &/or §707(b)1 and (3) Motion to Dismiss filed at d.e. #29.

[5] Debtors' Opposition to U.S.T. §707(b) Motion to Dismiss filed at d.e. #38.

[6] Memorandum of Law to Supplement Debtors' Opposition to Untimely §707 Motion to Dismiss Filed by U.S.T. filed at d.e. #40.

[7] Opposition to UST §707 Motion to Dismiss [Answer to MTD] filed at d.e. #54.

**III**     **U.S.T. Motion to Dismiss §707(b)(3) is untimely**

The debtors respectfully re-allege and incorporate herein the allegations and contents contained in their objections and oppositions to the untimeliness of the U.S.T.'s motion to dismiss. Refer to d.e. #28, 29, 38, & 40, and 54 and footnotes 3 to 7.

Debtors continue to maintain that the U.S.T.'s §707(b) motion to dismiss under (b)(3) was untimely filed on May 22, 2009 outside of the prior extension granted to the U.S.T. by the Court until May 4, 2009 at d.e. #14. The extension granted to the U.S.T. at d.e. #14 expired on May 4, 2009. Several days prior to its expiration, the U.S.T. again requests an extension of 25 days to file its motions at d.e. #27 on April 30, 2009. The Bankruptcy Court never ruled on the extension requested by U.S.T. on 4/30/2009 at d.e. #27, nor did the Court ever enter a finding of "cause" for any of the extensions granted. Past the May 4, 2009 deadline and prior to the entry of any Order extending the 5/4/2009 deadline and prior to the entry of any finding of "cause" to extend the deadline, the U.S.T. filed its §707(b) motion to dismiss on May 22, 2009, 18 days outside of the deadline granted until 5/4/2009. The d.e. #27 request for extension was not ruled on by the court *per se*, but rather the Court enters the following Order at d.e. #36 which reads:

> *"ORDER: The U.S. Trustee has filed various motions seeking to extend the time to file a complaint to except debts from discharge or a complaint to deny discharge or to file a motion to dismiss, which the debtors have opposed.* ***Dockets #27 and #28 [sic] are denied as to the requests for extension of time to file §523 or §727 complaints.*** *Notwithstanding, the U.S. Trustee's motion to dismiss (dkt. #30) will be granted unless an opposition on the merits is filed within twenty days."*

**IV**     The U.S.T. moves to dismiss this case under under §707(b)(3)

Section §707(b) provides as follows:

*(3) In considering under ¶1 whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider-*

*(A) whether the debtor filed the petition in bad faith;* or
*(B)* <u>**the totality of the circumstances (. . . ) of the debtor's financial situation demonstrates abuse.**</u>

Emphasis provided.

We understand the Motion to Dismiss by the U.S.T. to be anchored on §707(b)(3)(B) or the "*(B)* <u>**the totality of the circumstances (. . . ) of the debtor's financial situation demonstrates**</u>

5

*abuse"* and that the motion filed by the U.S.T. as such does not invoke §707(b)(3)(A), to allege that the debtors filed petition in bad faith.

In order for the Court to dismiss the Debtor's case under § 707(b)(3), the UST must demonstrate abuse by a preponderance of the evidence. *See In re Pandl*, 407 B.R. 299, 301-02 (Bankr. S.D. Ohio 2009).

In debtors' quest for settlement, they have partially adjusted the Means Test and their Schedule I & J in response to the U.S.T.'s objections and in response to the further adjustment by debtors in their expenses and in response to Movant's objections and after "fine tuning" and further 'refinement' of their expenses.

As a result of these adjustments and responses to U.S.T.'s objections, there is now an intial disposable income of $253.60 at Initial Determination of Abuse but no abuse at Secondary Determination on Amended Means Test at d.e. #61

Although debtors submit that their revised and amended Means Test filed at d.e. #61 shows **$253.60** DI as an "initial determination of abuse, " there is no abuse on the official Means Test form at line 55 which provides for a secondary determination of abuse which in this case at line 55 concludes that there is a "no abuse determination."[8] In other words, debtors' disposable income [DI] is higher than the initial presumption of abuse threshold but on a secondary determination and according to the official form for Means Test there is no abuse. The form shows that the amount on line 51 [$253.60 x 60 = $15,216] is less than the amount on line 54 [$75,050 unsecured debt x by .25 = $18,762.50] their unsecured debt of $75,050 multiplied by .25 is less]. Refer to d.e. #61 Amended Means Test.

The U.S.T. has anticipated objection to consideration of anything other than old Schedule J and the IRS Standards. The U.S.T. argues that this Court's inquiry cannot look to either the amended Means Test, nor the original Means Test, nor the amended Schedules I & J, hoping to limit its case to a comparison of the old Schedule J vis a vis IRS Standards to show that debtors' expenses exceed the IRS Standards and therefore demonstrate abuse.

Although, debtors submit the proposed comparison of Schedule J with the IRS Standards is but one of the factors to be considered by this Court and probably a good "bench mark" for an

---

[8] A disposable income [DI] of $253.60 results in a "the presumption arises" at the "initial presumption determination" level at line 52; yet, at the "secondary presumption determination" at line 55 shows that the "presumption does not arise" since in this case "the amount on line 51" [$230.31 multiplied by 60 months = $13,818.60] "is less than the amount on line 54" [$75,050 US debt multiplied by .25 = $18,762.50].

analysis of debtor's financial situation, the analysis by this Court, nevertheless, should not be limited to this alone, but must consider the totality of circumstances debtors' financial situation.

**V**  **$1,671 DI on Means Test by UST vs $253.60 DI on amended Means Test by debtors & $2,000 DI on old Schedule J by UST vs $-($112.00) DI on amended Schedule J by debtors**

The U.S.T. argues in its Motion to Dismiss and finds that debtors have a disposable income of $1,671 as per U.S.T. calculations and computations of the old Means Test. In its announced Exhibit titled *Schedule J claimes expenses vs. IRS Standards per (See 11 U.S.C. §707(b)(2)(A)(ii)(l)* the it appears that the DI may be even higher. These computations are denied by debtors, and even if the computations were to be accepted and determined by this Court, debtors do not have the ability or capacity to fund a chapter 13 plan in the amounts propounded by the U.S.T. and cannot responsibly consent to a conversion of their case to a chapter 13 under these circumstances. Furthermore, debtors sustain that their financial situation does not demonstrate abuse which is ultimately what must be determined by this Court under the only basis of law left pending under the U.S.T. motion under §707(b)(3)(B) and deny having any disposable income on their Means Test or Schedule J.

If in fact the U.S.T.'s mechanical computations and calculations are found to be technically correct, the disposable income reached by the U.S.T. is inconsistent with the debtors' actual and necessary and reasonable expenditures for their household [HH] of 4 and cannot be used to establish abuse. Debtors have neither a lavish lifestyle, incurred in excessive spending pre bankruptcy or during bankruptcy or conducted themselves inappropriately as this relates to their spending habits in contemplation or during bankruptcy. Debtors have moderate spending habits who have neither 'loaded up' on credit card expenditures, incurred new secured debt or purchased cars, boats, yatchs, refinanced the very modest home mortgage, nor any other excessive or abusive misconduct that could lead this Court to find that debtors' financial situation to demonstrate abuse.

**VI**  **Pre petition financial management plan with Alma Financial for 1.5 years is further circumstance showing debtors' honesty of purpose in filing chapter 7 & in their financial situation**

As further evidence of debtors' lack of abuse in their motive for filing bankruptcy and in their overall finanacial situation, in seeking bankruptcy relief under chapter 7 is the fact that these debtors both made a good faith attempt to repay their creditors under a formal repayment

plan with Alma Financial during 1.5 years. The reality of the continuous spiraling cost of living and expenses in Puerto Rico did not allow debtors to continue funding the repayment plan with Alma Financial without affecting their and their families' livelihood and saw no other alternative than to file bankruptcy. Debtors' attempts at repaying their creditors during 1.5 years with Alma Financial shows honesty of purpose in filing for protection under chapter 7 and is further evidence that their budget and income cannot sustain and fund a chapter 13 plan..

**VII**     **Abuse under the Totality of the Circumstances**

The Seventh Circuit Court of Appeals has stated that [passing] the means test simply means that the debtor's petition is not <u>presumed</u> abusive ... the UST can still request dismissal... under section 707(b)(3), either for bad faith or based on the totality of circumstances (which can take into consideration a debtor's actual income and expenses)." <u>Ross-Tousev v. Neary (In re Ross-Tousev)</u>, 549 F.3d 1148, 1161-62 (7th Cir. Dec. 17, 2008). Under the totality of the circumstances test, "a debtor's ability to pay may be the most relevant factor, but the Court must also consider: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition." *In re Cutler.* 2009 WL 2044378, at * 3 (Bankr. S.D. Ind. July 9, 2009) (citing *In re Green.* 934 F.2d 568, 572 (4th Cir.1991). *In re Killian*, 422 B.R. 903 (Bankr. N.D. Ill., 2009). *In re Lorenca*, 422 B.R. 665, 669 (Bankr. N.D. Ill. 2010).

The Bankruptcy Code does not define the terms "abuse" or "totality of the circumstances" for purposes of this section. Even though the phrase "totality of the circumstances" in § 707(b)(3) is new under BAPCPA, the concept is not novel. *In re Zaporski*, 366 B.R. 758, 769 (Bankr. E.D. Mich. 2007); *In re Nockerts*, 357 B.R. 497, 505 (Bankr. E.D. Wis. 2006) (noting that the "totality of the circumstances" test has its roots in pre-BAPCPA law). The "totality of the circumstances" concept is a "'judicially created construct for determining "substantial abuse" under pre-BAPCPA § 707(b), and the case law applying that concept lays out the general scope of the abuse to be determined.'" *Zaporski*, 366 B.R. at 769 (*quoting* Eugene R. Wedoff, *Judicial Discretion to Find Abuse under § 707(b)(3)*, 25-APR AM.

8

BANKR. INST. J. 1, 52). Hence, it is appropriate to apply pre-BAPCPA concepts in determining "abuse" under § 707(b)(3). *In re Cribbs*, 387 B.R. 324, 333 (Bankr. S.D. Ga. 2008).

Before BAPCPA, the courts of appeals in six circuits had interpreted "totality of circumstances" by adopting open-ended, multi-factor tests. *See Costello v .Bodenstein*, No. 01 C 9696, 2002 WL 1821663, at *3 (N.D. Ill. Aug. 7, 2002) (citing cases). Except for the Fourth Circuit in *In re Green*, 934 F.2d 568 (4th Cir. 1991), these courts agreed that the primary factor in determining what the pre-BAPCPA version of the statute called "substantial abuse" (rather than merely "abuse") was the debtor's ability to repay his debts. *See Costello*, 2002 WL 1821663, at *4. These courts of appeals also concluded that an ability to repay debts standing alone could be sufficient to warrant dismissal, although other factors might be relevant. *Id.* Other relevant factors could include whether the debtor has a stable source of future income, whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities, whether the petition was filed because of sudden illness calamity, disability or unemployment, whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay, and whether the debtor's schedules reasonably and accurately reflect his true financial condition. *See Green*, 934 F.2d at 572; *In re Krohn*, 886 F.2d 123, 127 (6th Cir. 1989). The "totality of the circumstances" analysis is fact intensive and performed on a case-by-case basis. *In re Stewart*, 175 F.3d 796, 809 (10th Cir. 1999).

The Seventh Circuit noted that consideration should be given to a debtor's actual income and expenses when determining whether to dismiss a case under § 707(b)(3). *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148, 1161-62 (7th Cir. 2008). In analyzing whether dismissal of a case is warranted under the "totality of the circumstances," courts focus on several factors, including whether the debtor has the ability to repay a substantial portion of his debts. Courts are not limited to considering the debtor's financial situation only as it existed on the day the petition was filed, but may, and indeed must, consider the debtor's financial situation at the time the motion to dismiss is heard. *In re Pennington,* 348 B.R. 647, 651 (Bankr. D. Del. 2006). Section 707(b)(3) requires proof of something more than the ability to fund a Chapter 13 plan in order to avoid rendering the means test of § 707(b)(2) "mere surplusage." *Nockerts*, 357 B.R. at 506. *Accord In re Vecera*, 430 B.R. 840, 845 (Bankr. S.D. Ind. 2010); *Cribbs*, 387 B.R. at 334; *Cutler*, 2009 WL 2044378, at fn 7.

Many courts have dismissed Chapter 7 cases for abuse under § 707(b)(3). *See In re Pak*,

9

343 B.R. 239 (Bankr. N.D. Cal. 2006) (dismissing the case of a single debtor with no dependents whose current monthly income was less than the applicable state median, he became employed and earned more than $100,000 per year with household expenses, including two car payments, that were excessive); *In re Amador*, 349 B.R. 688 (Bankr. D. Idaho 2006) (finding abuse where eliminating expenses for such items as food for their teenage son's friends and cellular telephone expenses, the debtors had the ability to repay a significant portion of their debt, including 100% of their priority unsecured debt); *In re Lamug*, 403 B.R. 47 (Bankr. N.D. Cal. 2009) (dismissing case where debtors had an ability to repay a substantial portion of their debts; debtors enjoyed a stable income substantially above the applicable state median income and the decision to surrender their properties and move into a much less expensive rental property, which even with utility and 401(k) expenses, left them with over $3,300 per month in disposable income); *In re Ruel*, 418 B.R. 389 (Bankr. D.N.M. 2009) (dismissing case where the debtors had the ability to propose a Chapter 13 plan that would yield an approximate 70% dividend to unsecured creditors–debtors had a stable income and an ability to reduce their expenses by selling one of their cars or motorcycles and seeking cheaper housing; their financial problems were the result of living beyond their means for several years); *In re Springirth*, Bankr. No. 07-1437-AJM-7, 2008 WL 748138 (Bankr. N.D. Ind. Feb. 29, 2008) (dismissing the case prospectively after thirty days if the debtor did not convert the case to Chapter 13 within that time where most of the unsecured debt was from credit cards in his name alone, but many of the purchases benefitted the household, including his non-debtor spouse who earned more than the debtor; debtor switched careers which resulted in significantly less income).

    In contrast, there are several reported decisions wherein the results were favorable to debtors defending against a motion to dismiss under § 707(b)(3). *See In re Tucker*, 389 B.R. 535 (Bankr. N.D. Ohio 2008) (rejecting such a motion predicated on the debtor making 401(k) contributions and loan repayments when the debtor's budget reflected a very modest lifestyle); *In re Mravik*, 399 B.R. 202 (Bankr. E.D. Wis. 2008) (same); *In re LeRoy*, Bankr. No. 08-26263-svk, 2009 WL 357923 (Bankr. E.D. Wis. Feb. 12, 2009) (same); *In re Vecera*, 430 B.R. 840 (Bankr. S.D. Ind. 2010) (declining to dismiss where the post-petition rent payment was $1,200 less than the mortgage payment on the surrendered home; although a few of the expenses could be scaled back to a small degree, none of the expenses were found abusive nor would any specific expense, if cut out or reduced, free up enough disposable income to create a meaningful

10

distribution to creditors); *In re Jensen*, 407 B.R. 378 (Bankr. C.D. Cal. 2009) (denying motion where the debtors were paying $4,446 per month on a $800,000 home, $396 per month on a motor home, and $760 per month on a boat–the debtors had incurred these secured obligations at least two years prior to their bankruptcy filing at a time when they had adequate income to service the debts and there were no other indicia of abuse). *In re Roppo* (Bankr. N D Ill E D September 16, 2010) #09-B037273, John H Squires, Judge.

*In re Deutscher*, 419 B.R. 42 (Bankr. N.D. Ill. 2009) (Barbosa, J.) (granting the motion to dismiss where the debtors had purchased a forty-two foot yacht fourteen months pre-petition and a second boat and sport utility vehicle thereafter, the payments consumed nearly one-third of their monthly income, the debtor husband was unemployed and they were likely insolvent, combined with their intent to reaffirm those debts and some evidence that they might have been less than forthcoming with respect to their true financial situation); *In re Bacardi*, Bankr. No. 09 B 25757, 2010 WL 54760 (Bankr. N.D. Ill. Jan. 6, 2010) (Goldgar, J.) (finding abuse where debtors, making over $200,000.per year, kept an $800,000 house when they had reasonable alternative housing available that would permit a substantial repayment to their unsecured creditors; even if the debtors did not have less expensive house available to them, their excessive housing costs combined with their high income and their ability to repay something to their creditors made the case an abusive filing); *In re Lorenca*, 422 B.R. 665 (Bankr. N.D. Ill. 2010) (Schmetterer, J.) (granting a motion to to dismiss on a conditional basis because the debtors were devoting payments to retain a $493,000 home and another residential property that was losing money, but debtors desired to retain as an investment in the current depressed real estate market; debtors were given six weeks to divest themselves of their investment property, convert to Chapter 13, and file a plan).

The determination of whether a family budget is excessive or unreasonable is an "unenviable task." *In re Johnson*, 241 B.R. 394, 398 (Bankr. E.D. Tex. 1999) (determining what constitutes disposable income under 11 U.S.C. § 1325(b)). There is no bright-line rule for determining what is "reasonably necessary." *In re Nicola*, 244 B.R. 795, 797 (Bankr. N.D. Ill. 2000). A court should not superimpose its values and substitute its judgment for those of the debtor. *In re Navarro*, 83 B.R. 348, 355 (Bankr. E.D. Pa. 1988). The Court finds that this logic equally applies for purposes of § 707(b)(3). A court should, however, substitute its judgment for that of the debtor when any one of the following additional factors is present: (1) the debtor

11

proposes to use income for luxury goods or services; (2) the debtor proposes to commit a clearly excessive amount to non-luxury goods or services; (3) the debtor proposes to retain a clearly excessive amount of income for discretionary purposes; (4) the debtor proposes expenditures that would not be made but for a desire to avoid payments to unsecured creditors; and (5) the debtor's proposed expenditures as a whole appear to be deliberately inflated and unreasonable. *Id.* at 355-56.

### VIII Debtors have in part adjusted old Means Test & old Schedules I & J in response to UST in their amended Means Test & amended Schedules I & J

Debtors have accepted some of U.S.T. observations/objections and have in due course amended their Schedule J and Means Test, example is the recent disallowance in the recent Supreme Court case of *Ransom* decided on January 11, 2011 which determined that debtors may not take the deduction for ownership expense for a vehicle that is free and clear of secured debt or lease. Debtors herein have revised and amended their Means Test dated January 25, 2011 to properly claim the IRS deduction for old cars of $200 for their 2000 Dodge Durango, instead of the previously taken $489, for a total of "allowable expense" for 2 cars of $689. Debtors' have listed $677 in the expense for "gasoline/maintenance/registration".

Likewise, debtors have revised line 26 eliminating the $167.06 previously claimed and deducted for the payment of the spouse's 401K-retirement plan.

Debtors in actual fact expend more than the ordinary medical expense allowance for husband's medical conditions at line 19B allowed at $228 & at line 31 for additional medical expenses in the amount of $295. Debtor husband suffers from medical conditions that support the additional expense.

The U.S.T. argues excessiveness or abuse because, for example debtors in actual fact at Schedule J expend more than the school expense allowance at line 38 of the Means Test of $137.50 in that private school for their minor child averages approximately $989 monthly [$402 monthly tuition + $587 annual fee & school & uniform expenses] on the original Schedule J. These amounts were adjusted downward on Amended Schedule J in response to the change in school of their minor child to a less expensive school, or $787 monthly near to the date of the filing of their petition [$370 monthly tuition + $417 annual fee & school & uniform expenses]

Private school education is a necessity in Puerto Rico and is not a luxury or a discretional expense both for the education of their minor child and for her safety and well being and also

12

provides both debtors the tranquility needed for their employment Debtors argue that the actual expense should certainly be considered in the context before this Court and not find that the petition has been filed in bad faith or is abusive because of the private school expense. Judicial notice should be taken of the predicament of parents in Puerto Rico with school age children who must recur to private schools in Puerto Rico for their children, both for education and security reasons. Judicial notice should also be taken of the poor quality and insecurity in the public school system in Puerto Rico which requires private schooling for the children of Puerto Rico.

As a result of these HH expenses, viewed as impermissible by the U.S.T., but reasonable and necessary by debtors, the Amended Schedule J reflects an actual monthly deficit in their HH expenses of **(-$112.18),** the U.S.T. argues more than $2,000 DI. Debtors' expenses are either less or similar to the National Standards, except for the food and related expenses, and the school expenses for the minor 5 year old child.

The debtors' monthly mortgage installment is $685 monthly and their monthly-secured car payment average of $325 at lines 23 & 42 of the Means Test, yet in actual fact debtors pay $434 monthly for the one vehicle with secured debt.

The reasonableness and the overall moderation of debtors' expenses and lifestyle cannot in any analyis of the totality of circumstances show any abuse in debtors' financial situation either at $253.60 DI or at the $1,279.37 DI reached by U.S.T.

Under a mock chapter 13 analysis, if $253.60 DI is accepted by the Court, for 60 month repayment is equal to $15,216 plan base, or $13,847 after trustee's commission of .91 and attorney fees of $3,000, produces a probable payout of $10,847 to the estate, with which an insignificant proportion of debtors' unsecured creditors of 14.45% debt could be repaid of debtors' unsecured debt of $75,050.

Under the totality of circumstances standard a payout of 14.45% to unsecured creditors in a chapter 13 does not show bad faith or abuse of in the filing of the bankruptcy petition by these debtors, since it is not significant or substantial payout under these debtors' circumstances.

The debtors cannot fund a chapter 13 at the amounts propounded by the U.S.T. of $1,279.37.

13

**IX  Pre petition financial management plan with Alma Financial for 1.5 years further circumstance showing debtors' honesty of purpose in filing chapter 7**

As further evidence of debtors' lack of abuse in their finanacial situation, and in seeking bankruptcy relief under chapter 7 is the fact that these debtor both made a good faith attempt to repay their creditors under a formal repayment plan with Alma Financial during 1.5 years. The reality of the continuous spiraling cost of living and expenses in Puerto Rico did not allow debtors to continue funding the repayment plan with Alma Financial without affecting their and their families' livelihood and saw no other alternative than to file bankruptcy.  Debtors' attempts at repaying their creditors during 1.5 years with Alma Financial shows honesty of purpose in filing for protection under chapter 7.

Debtors have neither 'loaded up' in credit card debt nor did they incur in pre petition secured debt prior to filing their petition; neither do debtors' actual expenses show a lavish lifestyle at the expense of their creditors.  Debtors' conduct at all pertinent times to the issue of abuse has been appropriate, honest and reasonable with the absence of any egregiousness or serious misconduct by debtors in spending or living outside of their means that when added to a DI can be concluded to be abusive.  There have been no cash advances nor did debtors they make consumer purchases far in excess of their ability to pay.

Debtors are simply victims of the spiraling cost of living in Puerto Rico and the ever-increasing cost of consumer goods.

CONCLUSION

Even if the Court were to adopt the theory advanced by the UST that debtors' expenditures appear unreasonable to the extent that they exceed the amounts allowable under IRS standards, this would only serve to establish a "presumption" of abuse that can ultimately be rebutted and tempered by the reality of Debtors' actual and necessary expenditures according to their special needs and circumstances, their particular health problems, the continued increase in the cost of living, and the specific circumstances of Puerto Rico that render private schooling a Necessity and not a luxury, along with the onslaught of unforeseen expenditures which most debtors are unprepared to deal with.  The UST advocates a formulistic method to ascertain the reasonableness of Debtors' expenditures that is simply inappropriate to portray Debtors' actual and necessary expenses in a manner that is both fair

14

and objective, and that is ultimately inconsistent with the "totality of circumstances" approach of §707(b)(3)(B).

RESPECTFULLY SUBMITTED this 19th day of February, 2011.

*/s/ L.A. Morales*
LYSSETTE MORALES VIDAL
L.A. MORALES & ASSOCIATES P.S.C.
URB VILLA BLANCA
76 AQUAMARINA
CAGUAS, PUERTO RICO 00725-1908
TEL 787-746-2434 FAX 258-2658
Email lamoraleslawoffice@gmail.com
USDC PR #120011

*ELECTRONIC FILING*

I HEREBY CERTIFY, that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF Filing System which will send a notification, upon information and belief, of such filing to the Chapter 7 Trustee and to all subscribed users.

February 19, 2011

/s/ L.A. Morales